**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 11 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WALDO MACKEY,

      Petitioner - Appellant,

v.

DAVID HATT, Warden, Dickens
County Correctional Center, ROBERT
FURLONG, and THE ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

      Respondents - Appellees.

No. 01-1443
D.C. No. 97-K-1336
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **BALDOCK**, and **HARTZ**, Circuit Judges.

A Colorado state court jury convicted Petitioner Waldo Mackey of first degree

murder in 1985.  Prior to trial, Petitioner moved to suppress a police officer's testimony

about visual observations of Petitioner's apartment made after the building manager let

the officer into the apartment.  The state trial court denied the motion to suppress, finding

the officer's entry into the apartment was "reasonable."  The Colorado Court of Appeals

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

found no exigent circumstances justified the search, but remanded to the trial court to determine whether Petitioner abandoned his apartment prior to the search. On remand, the state trial court found Petitioner abandoned his apartment, and the Colorado Court of Appeals affirmed. Petitioner sought habeas corpus relief under 28 U.S.C. § 2254 in federal district court, claiming the state court's factual determination he abandoned his apartment was "egregious." The federal district court denied habeas relief, concluding that under Stone v. Powell, 428 U.S. 465 (1976), the court could not grant relief on Petitioner's Fourth Amendment claim. Alternatively, the court determined the state court's resolution of the Fourth Amendment issue was not contrary to or an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1). Petitioner appealed, and we granted a certificate of appealability on Petitioner's Fourth Amendment claim. We have jurisdiction under 28 U.S.C. §§ 1291 & 2253. We affirm.

I.

On February 14, 1980, Jeri Lynne Barnes' body was discovered in an alley next to Petitioner's apartment building. Barnes had not been seen since she left work on February 12. Her body was wrapped in a sheet, and tied at the shoulders and knees with an extension cord and a belt. She had been raped, beaten, and strangled.

On February 12, Petitioner left work and never returned. Petitioner's supervisor went to Petitioner's apartment several times that week looking for Petitioner. After failing to find him, the supervisor left a note on Petitioner's apartment door on February

15. When Petitioner's supervisor subsequently learned of a body found near the apartment building, he called the police out of concern for Petitioner.

Prompted by the supervisor's call, a police officer went to Petitioner's apartment on February 19. The supervisor's note was still on the door. The officer knocked on the door, but got no response. The building manager informed the officer Petitioner had paid rent on the apartment through the end of the month. Without first obtaining a warrant, the officer had the manager open the door and entered the apartment. He noticed the lights were on, and the first-floor apartment's windows were open, despite the cold outdoor temperature. The bed had no linens on it. The officer observed an open suitcase with a coat packed inside it sitting on a table. In the kitchen, he saw pots and pans with some grease and leftover food. Some clothing was hanging in the closet, and an extension cord similar to the extension cord found around the victim was plugged into the wall.

The officer left the apartment without removing any items. He left a card with his name and number, asking Petitioner to contact him when Petitioner returned. The officer also asked the manager to contact him if Petitioner returned. The manager informed the officer that Petitioner's property would be boxed up and removed if Petitioner did not return to claim it. The officer requested the manager contact him if Petitioner did not return by the end of the month. At the end of the month, a new apartment manager boxed up Petitioner's belongings and placed them in unsecured storage. The officer called to find out what happened to the property, and the new manager told him it was in storage.

The officer obtained a warrant and retrieved the boxed items, but the extension cord was not among the seized items.

Petitioner's neighbor in the apartment building, Lucille Stice, testified Petitioner visited her apartment and requested to use the telephone on February thirteenth or fourteenth. Phone records showed two long distance phone calls were made from her phone on February twelfth. Stice testified Petitioner told her he needed to go to California for a family emergency. Stice and her boyfriend drove Petitioner to the airport, but she did not know whether Petitioner actually got on a plane. Stice also testified she saw Petitioner in the apartment building again about a week after Valentine's Day. Petitioner came to Stice's apartment. Stice informed Petitioner the police were looking for him, and she asked him why he killed that girl. Stice testified Petitioner did not respond to this accusation. Stice did not see Petitioner again until trial.

The State of Colorado charged Petitioner with Barnes' murder, and Petitioner was extradited to Colorado while serving a sentence for another crime in California. Prior to trial, Petitioner moved to suppress the officer's testimony about what he saw when he entered the apartment. The state trial court held an evidentiary hearing. After hearing testimony, but without permitting argument from the prosecution, the trial court found the intrusion into the apartment was "reasonable," and denied the motion. After the court ruled, the prosecution cited for the record a case about police entering a home under exigent circumstances. The jury subsequently convicted Petitioner of first degree murder.

Petitioner appealed to the Colorado Court of Appeals, arguing the trial court should have suppressed the officer's testimony because the officer's entry into the apartment violated the Fourth Amendment. The prosecution argued for the first time on appeal that Petitioner had abandoned the apartment. The Colorado Court of Appeals held no exigent circumstances existed permitting a warrantless entry into the apartment, but remanded to the trial court to determine whether, based on the evidence elicited at the prior evidentiary hearing, Petitioner had abandoned the apartment. On remand, the Government filed its brief with the trial court arguing Petitioner abandoned the apartment. Petitioner filed no responsive brief. The trial court found Petitioner abandoned the apartment. Petitioner appealed, and the Colorado Court of Appeals affirmed, concluding the record supported the trial court's finding of abandonment.

Petitioner then filed for federal habeas corpus relief. The district court adopted the magistrate's recommendation and denied the petition. First, the district court noted <u>Stone v. Powell</u>, 428 U.S. 465 (1976) precludes a federal court from granting habeas relief on a Fourth Amendment claim where the state prisoner had a full and fair opportunity to litigate the claim in state court. The district court concluded Colorado gave Petitioner a full and fair hearing on the issue. Alternatively, the district court concluded that even if <u>Stone</u> did not apply, the state court applied the correct federal law under 28 U.S.C. § 2254(d)(1). Petitioner appeals.

II.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 481-82 (1976). Petitioner contends he was denied a full and fair opportunity to litigate his Fourth Amendment claim because the state trial court ignored key facts in making its abandonment determination. We review de novo whether Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court. Cannon v. Gibson, 259 F.3d 1253, 1260 (10th Cir. 2001).

Petitioner relies on Gamble v. State of Okla., 583 F.2d 1161 (10th Cir. 1978), where we interpreted the phrase "full and fair opportunity" to include the state court's "recognition and at least colorable application of the correct Fourth Amendment constitutional standards. Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards." Id. at 1165. Petitioner argues we should extend Gamble and hold a State likewise does not give a defendant a full and fair opportunity where it ignores controlling facts or fails to apply those facts in a colorable manner. Petitioner argues the facts here clearly demonstrate he did not abandon his apartment.

-6-

Assuming without deciding that such an exception to Stone exists, Petitioner cannot show the state trial court's factual determinations were not colorable. The state trial court determined the officer's entry into the apartment did not violate the Fourth Amendment because Petitioner abandoned the apartment. See Abel v. United States, 362 U.S. 217, 241 (1960) (holding government officials do not violate the Fourth Amendment by searching or seizing abandoned property). "The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object." United States v. Austin, 66 F.3d 1115, 1118 (10th Cir. 1995) (quotation and citation omitted). "An expectation of privacy is a question of intent which may be inferred from words, acts, and other objective facts." Id. (quotation and citation omitted).

Petitioner argues the trial court's abandonment determination was "egregious" because the court ignored Stice's testimony that she saw and spoke to Petitioner at the apartment building after the search. According to Petitioner, Stice's testimony proved Petitioner returned to the apartment building and therefore did not intend to abandon his apartment prior to the search. Petitioner argues the evidence shows he did not decide to abandon the apartment until after the search, when Stice notified him the police were looking for him and accused him of killing Barnes.

While Petitioner presents a reasonable interpretation of the facts, it is not the only reasonable interpretation. Petitioner disappeared from work without notifying his employer he would be leaving for an extended period of time. He did not return messages

left for him. He left his first-floor apartment's windows open for a week in cold weather, suggesting he did not care what happened to the apartment's contents. He subsequently failed to collect his belongings, and never indicated to anyone that he wanted his belongings. Although Stice saw Petitioner after the search, Stice testified she saw him in the building. Stice did not testify she saw Petitioner at or in his apartment. Petitioner may have returned to the building to visit Stice or to gather information, but with no intention of returning to his apartment. After the conversation with Stice, Petitioner was not seen in Colorado again until he was arrested and brought back for trial years later. Based on this evidence, the state trial court's conclusion Petitioner abandoned his apartment was a colorable determination, and was not "egregious."

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge